## ISAAC W. GARVIN

### *v.*

## WILLARD WISWELL.

1. COUNTY ORDER—*negotiable under the statute.* An order issued by a county on its treasurer, payable to a person therein named on a day certain, is a negotiable instrument, under the statute, as much so as a promissory note.

2. ASSIGNMENT—*when legal title passes by delivery.* A county bond or order for the payment of money payable to bearer, is negotiable by delivery, without being indorsed, and the legal title will pass the same as a bank bill, by delivery.

3. SAME—*when indorsement necessary.* A county bond or order payable to a person therein named, or bearer, can not be transferred so as to vest the legal title, except by indorsement of the payee, but the equitable title may pass by a sale and mere delivery.

4. PROMISSORY NOTE—*possession evidence of ownership.* Possession of a note, bond or bill, unattended by circumstances which, in a reasonable mind, ought to excite suspicion or distrust, or put a party on inquiry, is *prima facie* evidence of ownership in the holder, and a purchaser from such a holder will be protected until his purchase is assailed by one who can establish a legal title to the instrument.

5. SAME—*trover for note lost and found.* If a negotiable instrument is lost, and found and put in the market, and purchased by one without notice of the facts, the holder of the legal title and owner, upon demand, may maintain trover for its value.

6. SAME—*rights of equitable owner of lost note, as against an innocent purchaser from the finder.* The equitable owner of a lost note or other negotiable paper, has no superior equities to those of an innocent purchaser for value in the market, and can not maintain any action against such purchaser.

7. NEGLIGENCE—*upon whom loss must fall.* Where one of two innocent parties is to suffer loss, it must fall upon the one first in fault. If, therefore, the equitable owner of a note loses the same, and it is found and put upon

the market, and comes into the hands of an innocent and *bona fide* purchaser, the loss must fall upon the loser of the note for his negligence in not taking proper care of the same.

APPEAL from the Circuit Court of De Kalb county; the Hon. THEODORE D. MURPHY, Judge, presiding.

Mr. CHARLES KELLUM, and Mr. JOHN J. McKINNON, for the appellant.

Mr. W. D. BARRY, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action brought by Isaac W. Garvin against Willard Wiswell, to recover money which the defendant had received from the county treasurer of DeKalb county, in payment of a certain county bond and coupons attached, which the plaintiff claimed to own.

The bond and coupon were in the following form:

" No. 889.                                                    $100.00

STATE OF ILLINOIS, ) ss.      Board of Supervisors,
DeKALB COUNTY.     )          September term, 1864.

*Treasurer of DeKalb County:*

On the first day of July, A. D. 1874, pay to John Murphy, or bearer, $100, out of the funds appropriated for bounties to volunteers, with interest at the rate of 8 per cent per annum from this date, upon the presentation of the annexed coupons.

Dated, January 1, A. D. 1865.

Countersigned and registered, )      AARON K. STILES, *Clerk.*
    R. A. SMITH, Co. Treasurer.  )

No. 1.                                                         $8.00

STATE OF ILLINOIS, ) ss.
DeKALB COUNTY.     )

The treasurer of said county will pay $8 to bearer, on the first day of July, 1874, being one year's interest up to that date, on county order No. 889.    Dated, January 1, 1865.

R. A. SMITH, *Treasurer.*
A. K. STILES, *Clerk.*"

The plaintiff testified that he purchased of one Morris Holcomb, the bond, and paid for it, and, in the spring of 1870, he lost it.

It appears, from the defendant's evidence, that he purchased the bond in July, 1870, of one E. F. Dutton. The purchase was made by Pierce & Dean, defendant's bankers. The defendant had no knowledge, when he made the purchase, that the bond had been lost, or that plaintiff had any claim upon it. Indeed, it was admitted on the trial that the defendant was an innocent purchaser for a valuable consideration.

It is insisted, on behalf of the plaintiff, that, as the bond was payable to Murphy, or bearer, and was never indorsed by him, the legal title did not pass to the defendant, while, on the other hand, it is contended that the legal title passed by delivery.

Under the language of our statute in force at the time the defendant obtained the bond, we entertain no doubt it was a negotiable instrument. Sec. 3, Gross' Statutes of 1869. 461, declares, all promissory notes, bonds, due bills and other instruments in writing made or to be made by any person or persons, body politic or corporate, whereby such person or persons promise or agree to pay any sum of money, shall be taken to be due and payable, and the sum therein mentioned shall, by virtue thereof, be due and payable to the person to whom said note, bond, bill or other instrument in writing is made.

Section 4 declares, any such note, bond, bill or other instrument in writing, made payable to any person, shall be assignable by indorsement thereon under the hand or hands of such person, and of his, her or their assignee, in the same manner as bills of exchange are, so as absolutely to transfer and vest the property thereof in each and every assignee or assignees successively.

The bond in question was an instrument in writing, whereby the county, by its officers, promised at a certain time to pay John Murphy a certain sum of money, and as clearly falls within the provision of the statute as would a promissory note.

See, also, sec. 1500, vol. 2, page 435, Daniel on Negotiable Instruments, and cases cited in the note.

If the bond had been payable to bearer, we understand the law to be well settled that it could have been negotiated by delivery, without being indorsed. In such case the legal title to the instrument would pass the same as a bank bill, by mere delivery. *Johnson* v. *Stark Co.* 24 Ill. 75; *Jones* v. *Nellis*, 41 Ill. 482.

This bond was not, however, payable to bearer, but to John Murphy, or bearer, and it has been uniformly held, in this State, that a negotiable instrument, payable to a person named, or bearer, could not be transferred so as to vest the legal title except by indorsement. *Roosa* v. *Crist*, 17 Ill. 451; *Wilder* v. *De Wolf*, 24 Ill. 191.

So far, therefore, as the legal title to the instrument is concerned, under the decisions of this State, it remained in the original payee, John Murphy; but while the legal title to a negotiable instrument can not be transferred except by indorsement, the equitable title may and often does pass by sale and delivery.

This brings us to the consideration of the rights of the parties to the record in relation to the money obtained by the defendant from the county, in payment of the bond.

The defendant found the bond on the market, in the hands of one Dutton, and purchased it of him in perfect good faith, paying its full value, without notice that the plaintiff had either right, title or interest therein.

Possession of a note, bond or bill, unattended by circumstances which, in a reasonable mind, ought to excite suspicion or distrust, or put a party on inquiry, is *prima facie* evidence at least of title in the holder. *McConnell* v. *Hodson*, 2 Gilm. 640. When, therefore, the defendant found the bond in the possession of Dutton, in the absence of any fact or circumstance calculated to show that the plaintiff had any interest therein, or that Dutton was a dishonest holder, the defendant had a right to presume that the possessor of the instrument was the *bona fide* owner, and he will be protected in his pur-

chase until assailed by some person who can establish a legal title to the instrument.

It is obvious, from the evidence, that the plaintiff failed to establish title to the bond, or an equity superior to that of the defendant. The plaintiff claims to have purchased the bond of Morris Holcomb, but he does not show that Morris Holcomb was the legal or even equitable owner. It nowhere appears where or of whom Holcomb obtained the bond. Suppose it was stolen by him, obviously his transfer would not create a right in the plaintiff superior to that held by himself, and had the legal owner found the bond in the possession of the plaintiff, obtained under such circumstances, he, no doubt, upon demand, might have maintained trover for its value.

But suppose we indulge the presumption that Morris Holcomb, when he sold to the plaintiff, was the equitable owner, and that the plaintiff, after he obtained the bond, lost it, and it was found by some unknown person, and sold in the market for value, and finally passed into the hands of Dutton, who sold to the defendant for full value. Under such circumstances, we do not understand that the equities of the plaintiff are superior to those of the defendant.

It is said, in Story on Promissory Notes, 590, losing a promissory note ordinarily implies negligence on the part of the loser, and the inevitable results of such negligence ought to fall upon him, rather than upon an innocent party.

We understand the rule to be general, that, where one of two innocent parties is to suffer, the loss must fall upon the one first in fault. If, therefore, the plaintiff lost the bond, it was by this negligent act that it found its way upon the market, and the loss should be visited upon him, rather than the defendant, who purchased without notice and for full value.

The judgment will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE DICKEY: I am compelled to dissent from the conclusion of the majority of the court. This paper is not commercial paper, as is conceded in the opinion. In relation

to such property, in equity, where the equities are equal, the first in time is the first in right. The proofs *prima facie* show plaintiff to be the equitable owner, and there is nothing to rebut this presumption. The defendant also gives *prima facie* evidence that he was the equitable owner, but this presumption is rebutted by proof of prior ownership by plaintiff, and that he has never been divested of his equitable title. The mere fact that he lost the paper did not deprive him of his right.